**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION**

| | |
|---|---|
| **JIMMY D. MATHIAS,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| vs. § | Civil Action No. 1:04-CV-0127-C |
| § | ECF |
| § | Referred to the U.S. Magistrate Judge |
| **JO ANNE B. BARNHART,** § | |
| **Commissioner of Social Security,** § | |
| § | |
| **Defendant.** § | |

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the court upon Plaintiff's complaint filed May 21, 2004, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for disability insurance benefits and for supplemental security income benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a brief in support of his complaint on March 1, 2005, Defendant filed her brief on March 31, 2005, and Plaintiff filed his reply on April 14, 2005. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

### I.   STATEMENT OF THE CASE

Plaintiff filed applications for disability insurance benefits and supplemental security income benefits on August 19, 2002, alleging disability beginning July 3, 2001. Tr. 8-10, 39. Plaintiff's

applications were denied initially and upon reconsideration. Tr. 11-14, 200-11. Plaintiff filed a Request for Hearing by Administrative Law Judge on April 2, 2003, and this matter came for hearing before the Administrative Law Judge ("ALJ") on October 8, 2003. Tr. 51, 212-72. Plaintiff, represented by a non-attorney, testified in her own behalf. Tr. 216-44. Dr. George Weilepp, a medical expert ("ME"), and Michael Driscoll, a vocational expert ("VE"), appeared and testified as well. Tr. 244-71. The ALJ issued a decision unfavorable to Plaintiff on December 17, 2003. Tr. 36-46.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that Plaintiff met the disability insured status requirements as of July 3, 2001, through the date of his decision and that Plaintiff had not engaged in substantial gainful activity at any time since July 3, 2001. Tr. 40. He found that Plaintiff has a "severe" combination of impairments, including non-insulin-dependent diabetes mellitus, diabetic peripheral neuropathy in his lower extremities, coronary artery disease, obesity, and a history of a syncopal episode, and he is status post total right hip replacement. *Id*. He further found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id*. Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible. Tr. 42.

The ALJ found that Plaintiff could not return to his past relevant work as a pattern maker for metal molds. Tr. 42, 44. He noted that Plaintiff was considered a "younger individual" with a "limited" education. Tr. 45.

The ALJ found that Plaintiff retained the RFC to perform light work, limited to jobs that do not require more than occasional crouching, crawling or kneeling; that do not require walking and standing, in combination, usually to more than sixty to ninety minutes at a time; that do not require climbing ladders or scaffolds; and that do not require working at heights. Tr. 44. Having found that Plaintiff could not perform the full range of light work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments. Tr. 45, 268. The ALJ relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of school bus monitor, with 2,800 jobs in Texas and 98,000 jobs nationally; office helper, with 4,400 jobs in Texas and 194,000 jobs nationally; and small products assembler, with 9,000 jobs in Texas and 266,000 jobs nationally. *Id*. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 45.

Plaintiff submitted a Request for Review of Hearing Decision/Order on February 12, 2004. Tr. 30-35. The Appeals Council issued its opinion on March 26, 2004, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request. Tr. 3-5. The ALJ's decision, therefore, became the final decision of the Commissioner.

On May 21, 2004, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

On Defendant's motion, the court ordered a remand to enter omitted evidence into the administrative record on October 13, 2004. On January 12, 2005, the court ordered that the remand be vacated and that the Commissioner's answer be accepted for filing.

## II.   STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g).  The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002).  The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity.  Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; s*ee* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453.  In this case, the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy.  Tr. 45.

### III.   DISCUSSION

Plaintiff argues that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence.  Specifically, Plaintiff argues that substantial evidence does not support the ALJ's conclusion that Plaintiff's rheumatoid arthritis ("RA") imposed no significant limitations on his ability to walk, lift, and use his hands (1) because the ALJ failed to provide any reasons for rejecting the uncontroverted opinion of the examining consultative examiner ("CE") that Plaintiff's RA caused weak grip and limited him to walking 2-3 blocks and lifting 10-15 pounds; and (2) because the administrative record contains no treating records regarding RA from Plaintiff's treating rheumatologist, the medical expert testimony was elicited on the basis of an incompletely developed record, and the transcript of the testimony regarding Plaintiff's RA is filled with so many gaps and omissions that they cannot be reviewed.

**A.   Whether the ALJ erred in determining Plaintiff's RFC because he failed to impose significant limitations on Plaintiff's ability to walk, lift, and use his hands and failed to give reasons for rejecting the opinion of the CE.**

Plaintiff alleges that the ALJ, in determining Plaintiff's RFC, failed to include sufficient limitations on Plaintiff's ability to walk, lift, and use his hands due to Plaintiff's RA.  The RFC determined by the ALJ includes the limitations of light work, which limits standing and walking, off and on, to a total of 6 hours out of an 8-hour work day and lifting of no more than 20 pounds at a time and no more than 10 pounds frequently.  20 C.F.R. §§ 404.1567(b), 416.967(b); Social Security Ruling 83-10.  The RFC further limits Plaintiff's combined standing and walking to usually no more than 60 to 90 minutes at a time. Tr. 44.  Plaintiff argues that the ALJ should have given more weight to the report of Dr. Daggubati, a CE, who opined in October 2002 that Plaintiff had functional limitations as a result of his RA.  He reported that Plaintiff was able to walk about ten steps and lift about 10-15 pounds from the ground and that Plaintiff was able to walk about 2-3 blocks.  He further reported that Plaintiff had a weak grip. Tr. 134.

Dr. Daggubati's opinion that Plaintiff was able to walk 2-3 blocks does not necessarily conflict with the RFC limitation that Plaintiff is usually limited to a combination of standing and walking of no more than 60 to 90 minutes at a time. The combination may include more standing than walking. Also, the ability to lift up to 15 pounds from the ground is not a lot different from the ability to lift 20 pounds at a time and 10 pounds frequently. Regarding Plaintiff's grip, Dr. Daggubati indicates only that Plaintiff has a functional impairment in making a strong grip. He did not specify any particular functional limitation for his grip.

The ALJ has the sole responsibility for weighing the evidence, may choose whichever physician's diagnosis is most supported by the record, and may incorporate into his RFC assessment the limitations supported by the diagnosis or diagnoses. *See Muse v. Sullivan,* 925 F.2d 785 (5th Cir. 1991). The ALJ also has the responsibility to resolve questions arising from conflicting medical opinions. *Masterson,* 309 F.3d at 272. The record demonstrates that the ALJ's RFC determination was supported by substantial evidence, including, as it relates to Plaintiff's RA, the evidence in the records and notes from Dr. Daggubati, Stephens Memorial Hospital, Dr. Williams, Hendrick Medical Center, Dr. Funk, and Dr. Blackwood; the letters from Dr. Halla; the Residual Functional Assessment by Dr. Dodd; and the testimony of Dr. Weilepp and Plaintiff.

The ALJ and Plaintiff's representative both questioned Plaintiff about his RA at the hearing. Plaintiff testified that he had been seeing Dr. Halla for rheumatoid and osteoarthritis for several years. Sometimes he would see him four or five times in a two-month period, even while he was still working. He gave Plaintiff medication and trigger-point injections. In 2000 and 2001 Dr. Halla gave him gold shots, Lodine 500, and prednisone. Tr. 223. The arthritis affected his feet, knees, hands, or shoulders or elbows at different times. When he was still working, the arthritis made him miss probably 15 days a year, or 20. Tr. 224. The arthritis caused swelling in his hands, feet, and elbows. Tr. 225. Plaintiff claimed that he continued to have problems with his arthritis two or three

-6-

days a month. Tr. 231. When his hands swell, they get stiff, he cannot bend them, and he cannot grip anything. It is generally the same with his feet. He can usually begin moving and flexing them within a day or so. He usually has to get an injection. His last injection was six months earlier. Tr. 232. Previously he has had as many as 16 to 20 injections during a six month period. He stated that he had not had as many injections recently because he owes the doctor a lot of money and he agreed that he would not ask for an injection unless he got to where he "couldn't move, more or less." Tr. 233.

Dr. George Weilepp, a Medical Expert, also testified at the hearing. He was questioned by both the ALJ and Plaintiff's representative. He testified that people who have the diagnosis of RA are characterized by having problems that are treatable and problems that are variable. Plaintiff has accommodated to it. Weilepp related Plaintiff's medications, methotrexate and prednisone, to an inflammatory disease of significance, indicating that no one would chance those medications long term without improvement. You normally would not prescribe gold injections or those other medications unless the person had inflammatory arthritis. Tr. 261-66.

Dr. Dodd, a DDS non-examining physician, completed a Residual Functional Capacity Assessment form on January 9, 2003. He opined that Plaintiff could occasionally lift and/or carry up to 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday, sit (with normal breaks) for a total of about 6 hours in an 8-hour workday, and do the other activities consistent with the ALJ's RFC finding. Tr. 182-89. He appears to report that, with respect to RA, there is some minor swelling and reduced grip, but functional limitations are clearly not impacted. Tr. 189.

Plaintiff himself reported at the Breckenridge Family Center in June 2002 that he could stand two hours before he "has to sit," and he walks three to four blocks before stopping, despite the pain from his hip replacement. Tr. 193.

In his decision, the ALJ acknowledged Plaintiff's history of RA, for which he had taken steroids and Methotrexate. He noted that in June 2001 Plaintiff's treating rheumatologist, Dr. Halla, opined that the Plaintiff's RA really was not a problem. Tr. 40. He noted Dr. Daggubati's examination report which included that Plaintiff complained of back pain; Plaintiff's shoulders, elbows, and wrists had a mild loss of range of motion but no swelling; his fingers had mild joint deformities with some swelling and loss of range of motion; there was evidence of a weak grip; his knees had mild crepitus and loss of range of motion; an X-ray of his right hand was unremarkable; and X-rays of his lumbar spine revealed only minimal degeneration. The ALJ further reported that Dr. Daggubati's impressions included RA in the hands, shoulders, and knees with functional impairment in walking, lifting, and making a firm grip and low back syndrome due to sprain or arthritis with functional impairment in walking up hills and lifting weight. He noted Dr. Daggubati's opinion that Plaintiff could walk about ten steps [sic] or two or three blocks and lift 10 to 15 pounds from the ground. Tr. 41. He reported Plaintiff's testimony relating to his RA which, in addition to the matters reported above, included that Plaintiff's arthritis was getting worse; it primarily affects his hands, feet, or shoulders two or three times per month; and his hands swell and get stiff and he cannot bend them or grip for [up to] one day. The ALJ reported the trigger point injections, the last being six months before the hearing, and Plaintiff's statement that he cannot afford to go to the doctor more often because he owes too much money. Tr. 42. He reported that Plaintiff still takes Methotrexate for his arthritis and has no side effects. He states that although Plaintiff has RA, his physical examination by the CE was very good and that Plaintiff's rheumatologist noted that the RA was not a problem. Tr. 43.

Thus, there is substantial evidence in the record that justified the ALJ in not including all of the RFC limitations claimed by Plaintiff as the result of Plaintiff's RA and based on Dr. Daggubati's assessment. Some of the specific evidence supporting the ALJ's arguably less restrictive RFC over

Dr. Daggubati's opinion includes that most of the limitations are not necessarily inconsistent with Dr. Daggubati's assessment; Dr. Daggubati describes most of Plaintiff's RA ailments as mild and an X-ray of his right hand as unremarkable; Plaintiff acknowledged that his pain from walking and using his hands subsides with the use of medications and heating pads; Plaintiff's treating physician for RA stated that Plaintiff's RA was not a problem, at least in comparison with Plaintiff's need for hip replacement and heart concerns at the time; Plaintiff worked as a pattern maker until he quit work because of a spider bite; even with his RA, he typically lifted up to 100 pounds or more in that job; Plaintiff claimed that he continued to have problems with his RA only two or three days per month; he gets relief from his injections and medications; he reported that he could stand two hours and walk three to four blocks at a time; Dr. Weilepp opined that RA is characterized as being treatable and Plaintiff has accommodated to it; and Dr. Dodd's RFC assessment was even less restrictive than the ALJ's determination.

It is clear from his decision that the ALJ carefully weighed the evidence, reasonably resolved the minor conflicts, and incorporated his findings in his assessment of Plaintiff's RFC. *See Muse,* 925 F.2d 785; *Masterson,* 309 F.3d at 272. Thus, the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence.

Plaintiff further specifically claims that the ALJ erred in determining plaintiff's RFC because he failed to give any reasons for "rejecting" Dr. Dagguboti's opinion. As previously noted, Dr. Dagguboti's limitation to walking 2-3 blocks does not necessarily conflict with the ALJ's RFC limitation of combined standing and walking to usually no more than 60 to 90 minutes at a time. Plaintiff himself stated that he could stand for two hours. And there is little difference between Dr. Daggubati's limitation to lifting up to 15 pounds from the ground and the ALJ's RFC limitation to lifting 20 pounds at a time and 10 pounds frequently. Thus, the court cannot conclude that there is a meaningful conflict between the ALJ's RFC finding and Dr. Daggubati's RFC opinion.

Neither does there appear to be a significant conflict between Dr. Daggubati's assessment and the other medical evidence regarding Plaintiff's functional abilities. Dr. Dodd opined that Plaintiff could lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently, stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday, and do the other activities consistent with the ALJ's RFC. He reports minor swelling and reduced grip but indicates that functional limitations are clearly not impacted. Dr. Weilepp testified that Plaintiff had accommodated to his RA and that Plaintiff's doctor would not have prescribed his RA medications long term unless he showed improvement. Moreover, Plaintiff's records show that he reported in June 2002 that he could stand two hours before he has to sit and he walks three to four blocks before stopping.

To the extent that there are conflicts in the evidence in the case record, it is for the ALJ to weigh the evidence and resolve the conflicts. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Anthony v. Sullivan,* 954 F.2d 289, 292, 295 (5th Cir. 1992); *Selders v. Sullivan,* 914 F.2d 614, 617 (5th Cir. 1990). The doctors who provided evidence regarding Plaintiff's functional abilities were all non-treating doctors. Thus, the ALJ was merely required to reflect that consideration was given to each medical consultant's opinion. Social Security Ruling 96-6p; 20 C.F.R. §§ 404.1527, 416.927. The ALJ's opinion clearly indicates that he considered such opinions. Tr. 40-41, 43. Then, after discussion of the evidence, the ALJ determined Plaintiff's RFC, based primarily on the assessment of Dr. Weilepp, finding that his testimony and opinions were well supported and very consistent with the remaining credible evidence. The court finds that the ALJ applied the proper principals of law in weighing the evidence, that his determination of Plaintiff's RFC was supported by substantial evidence, and that his RFC determination, therefore, is conclusive and must be affirmed. *See Richardson v. Perales,* 402 U.S. 389, 390 (1971).

**B.     Whether the ALJ erred in determining Plaintiff's RFC because he failed to fully develop the record.**

Plaintiff alleges that the ALJ's RFC failed to include significant functional limitations resulting from Plaintiff's RA because the record contains no treating records regarding RA from Plaintiff's treating rheumatologist, the medical expert testimony was elicited on the basis of an incompletely developed record, and the transcript is filled with so many gaps and omissions that they cannot be reviewed.

In determining Plaintiff's RFC, the ALJ found that Plaintiff, with his impairments, can still do light work, with additional limitations.  The full range of light work involves lifting of no more than 20 pounds at a time with frequent lifting of up to 10 pounds, and standing and walking, off and on, for a total of six hours out of an 8-hour workday.  The ALJ further limited Plaintiff to work that does not require more than occasional kneeling, crouching, or crawling; that requires only limited walking and standing (in combination, usually no more than 60 to 90 minutes at a time); that does not require climbing ladders or scaffolds; and that does not require working at heights.  Tr. 44. These limitations are based on Plaintiff's combined impairments, not any particular impairment. Plaintiff characterizes these limitations as not significant, even though Plaintiff was previously engaged in work that involved lifting up to 100 pounds or more until he stopped working due to a spider bite.

Plaintiff's basic complaint addressed under this section, however, is that the ALJ failed to fully develop the administrative record. ALJs must fully and fairly develop facts relevant to claims for benefits. *Kane v. Heckler,* 731 F.2d 1216, 1219-20 (5th Cir. 1984); 42 U.S.C. § 405(g); 20 C.F.R. 410.640 (2002). Failure to carry out this duty constitutes legal error, and precipitates a decision unsupported by substantial evidence. *James v. Bowen,* 793 F.2d 702, 704 (5th Cir. 1986)*; Kane,* 731 F.2d at 1219.

Plaintiff first argues that the ALJ failed to fully develop the administrative record because it contains no treating records from Plaintiff's treating rheumatologist regarding Plaintiff's RA. The record contains a letter dated June 28, 2001, from the rheumatologist, James T. Halla, M.D., to Dr. William Prater, Plaintiff's primary care doctor, and Dr. David Blackwood, a heart doctor. In the letter Dr. Halla stated that Plaintiff had increasing hip problems and was in the market for a total hip replacement. However, Plaintiff needed to resolve his cardiac status before considering the hip replacement. He said that Plaintiff's course had been complicated by an episode of syncope, a stress test interpreted as abnormal, and a family history of cardiac problems. He noted that Plaintiff carried a diagnosis of RA but that really was not a problem. Tr. 100.

Another record from Dr. Halla's office dated August 30, 2001, indicated that Plaintiff had been bitten by a spider and had been off work for five or six weeks. The plan was to see Dr. Funk about his hip. Tr. 99.

There were no other records from Dr. Halla's office in the case transcript. At the hearing before the ALJ on October 8, 2003, Plaintiff's experienced[1] non-attorney representative, Roger Owen, stated that all of Plaintiff's relevant medical records were currently in the file and the medical records were complete. He indicated that Plaintiff's testimony would "cover" for there not being much in the way of recent medical records. He confirmed that as far as he knew, everything available was in the file. Tr. 215.

It is clear from the record that the ALJ was well aware of and thoroughly considered Plaintiff's history of RA, even in the absence of any treatment notes from Plaintiff's rheumatologist. The evidence and consideration regarding Plaintiff's RA is more fully described in section A above, and it will not be repeated here. Considering that the ALJ questioned Plaintiff's representative

---

[1] The representative was attending his third hearing in two days. Tr. 214.

repeatedly about any additional records and that Plaintiff's representative stated that all of the relevant records were in the file and complete, one may reasonably conclude that Plaintiff did not believe that Dr. Halla's treatment records were *relevant,* or helpful.  A claimant has the duty to secure evidence of his disability. *See Thorton v. Schweiker,* 663 F.2d 1312, 1315 (5th Cir. 1981). Plaintiff has apparently made no effort to obtain or file Dr. Halla's records in this case.  While this case involves an administrative hearing and the ALJ has the duty to fairly develop the record, the Commissioner is not responsible for securing evidence of disability for a claimant.  *Id.*  The court is of the opinion that the ALJ in this case fully and fairly developed the facts and, considering Plaintiff's assurance that all of the relevant records were in the file, that he did not err by failing to obtain additional records from Dr. Halla or to re-contact him for clarification.

Even if the court were to find that the ALJ did not fully and fairly develop the facts, such error would warrant reversal and remand only if the Plaintiff affirmatively demonstrated prejudice or survived harmless error review.  Violation of a social security ruling merits remand only when a claimant affirmatively demonstrates prejudice.  *Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir. 1981). Harmless error analysis applies to administrative failure to comply with a regulation. *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003). Prejudice is established by showing that additional evidence could have been produced and "that the additional evidence might have led to a different decision." *Newton v. Apfel,* 209 F.3d 448, 458 (5th Cir. 2000).  An error is harmless unless there is reason to think that remand might lead to a different result.  *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir. 1989).  Plaintiff has failed to demonstrate prejudice and has shown no reason to think that remand might lead to a different decision.

Plaintiff further claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the medical expert testimony of Dr. Weilepp was elicited on the basis of an incompletely developed record.  Dr. Weilepp testified about a variety of Plaintiff's

impairments, including Plaintiff's RA. He testified, based on the information in the record, that RA is characterized as treatable and variable, that Plaintiff has accommodated to it, that Plaintiff's medications have probably resulted in improvement, and that Plaintiff's arthritis is probably significant and inflammatory. Again, Plaintiff assured the ALJ that all of the relevant records were in the file, and the Commissioner is not responsible for securing evidence of disability for a claimant. In any event, as referred to above, Plaintiff has not demonstrated prejudice or that there is reason to think that remand might lead to a different result.

Plaintiff next claims that the ALJ's determination of Plaintiff's RFC is not supported by substantial evidence because the transcript of the testimony regarding Plaintiff's RA is filled with so many gaps and omissions that they cannot be reviewed. After a careful review of the transcript, the court has determined that there is nothing unusual about the transcript, and it is not particularly difficult to determine what the witness and the questioner said. Unfortunately for the transcriber and reader, witnesses and questioners often speak at the same time, and the transcriber attempts to show this overlap of speakers by separating what each is saying with dashes in a manner that shows approximately when each is speaking. Obviously, the exact order in which overlapping speech is spoken cannot be accurately shown on paper. However, most of the overlapping speech is easily read and understood by ignoring and skipping the interruptions until the first speaker's sentence or thought is completed and then returning to read the skipped interruptions. Other dashes are included in the transcript to indicate a speaker's pause or a change of thought in the middle of a sentence. That is how people speak and cannot be avoided in transcribing. The only actual gaps or omissions in what was actually said are marked "[INAUDIBLE]." Again, that is how people speak. The transcript is not difficult to read and understand, and the actual omissions are minimal. Plaintiff's claim that Plaintiff's RFC is not supported by substantial evidence because the transcript is deficient and cannot be reviewed is without merit.

## IV.   CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 6th day of March, 2006.

_____
**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**